# IN THE COURT OF APPEALS OF IOWA

No. 16-1353
Filed October 26, 2016

**IN THE INTEREST OF G.F. AND A.S.,**
**Minor Children,**

**A.M., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.


      A mother appeals an order terminating her parental rights to two children.

**AFFIRMED.**


      Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant mother.

      Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

      Michelle R. Becker, of Youth Law Center, Des Moines, guardian ad litem

for minor children.


      Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

This termination-of-parental-rights appeal involves two children: nine-year-old A.S. and three-year-old G.F. Their mother, Stephanie, appeals the juvenile court's order severing her legal ties to the children.[1] Stephanie alleges the State failed to prove the statutory grounds for termination by clear and convincing evidence and contends termination is not in the best interests of her daughters. She alternatively asks for an additional six months to work toward reunification.

After our independent review[2] of the record, we concur with the thorough and well-written decision of the juvenile court. Given her unresolved substance abuse and domestic violence issues, Stephanie was not in a position to safely resume care of her daughters at the time of the hearing and waiting beyond the statutory time frames for resolution would be harmful to the children's welfare. Accordingly, we affirm the termination of Stephanie's parental rights.

## I.    Facts and Proceedings

The present child-welfare case opened in April 2015 when police arrested Stephanie and G.F.'s father, Y.F., for domestic abuse assault. Stephanie described what happened: "There was a domestic incident between [the father] and I. We were using drugs, and the kids were in their room. And the neighbors heard us yelling at each other and called the police."

---

[1] The juvenile court also terminated the parental rights of the children's fathers, but they are not parties to this appeal.

[2] We review termination proceedings de novo, which means we examine both the facts and law and judge anew those issues properly preserved and presented. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016); *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the juvenile court's fact-findings, especially when it comes to assessing the credibility of witnesses, but are not bound by them. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

Both parents had been using methamphetamine, and the girls tested positive for the drug. The children were removed from the parents' care and adjudicated as children in need of assistance (CINA) in May 2015.

Throughout the ensuing year, Stephanie made little progress in addressing her methamphetamine addiction or in recognizing the danger posed to her children by her involvement with Y.F., who was a domestic abuser and a convicted sex offender. On the substance-abuse front, Stephanie tested positive for methamphetamine in both February and March of 2016. She also tested positive for marijuana in February 2016. As for her association with Y.F., Stephanie testified she ended their relationship in September 2015, when she learned why he was on the sex offender registry. But the juvenile court found that testimony lacked credibility because the State's evidence showed their relationship continued through the time of the termination trial. Stephanie also stopped working with a domestic-violence advocate in August 2015.

Stephanie's visitation with her daughters was inconsistent. For example, she missed four visits in December 2015, missed five visits in January 2016, and cancelled two visits in February 2016. The children, especially A.S., suffered distress from Stephanie's inconsistency. Moreover, Stephanie did not stay abreast of A.S.'s therapy.

In April 2016, the State filed a petition to terminate Stephanie's parental rights, relying on Iowa Code section 232.116(1)(f) (2015) for A.S., section 232.116(1)(h) for G.F., and section 232.116(1)(i) for both children. In May, the court held a hearing at which Stephanie provided testimony. She emphasized she recently had found stable housing and was employed. In July 2016, the

court issued its termination order, finding the State had proven the grounds alleged in the petition by clear and convincing evidence. Stephanie challenges that order in her petition on appeal.

## II. Analysis

### A. Statutory Grounds

The State bears the burden to prove the allegations in its petition by clear and convincing evidence. *See* Iowa Code § 232.116(1)(f), (h). The clear-and-convincing standard requires more than a preponderance of evidence but less than proof beyond a reasonable doubt. *See L.G.*, 532 N.W.2d at 481. "It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence. *See D.W.*, 791 N.W.2d at 707.

In this case, because A.S. is over age four and G.F. is under age four, we choose to address Iowa Code section 232.116(f)[3] and (h).[4] Stephanie challenges just one element of both provisions—that the children could not be returned to their mother's custody without risking the kind of harm that led to their

---

[3] That provision requires proof of four elements: (1) the child is four years old or older; (2) the child has been adjudicated to be a CINA; (3) the child has been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that at the present time the child cannot be returned to the custody of her parents as provided in section 232.102.

[4] That provision requires proof of four elements: (1) the child is three years old or younger; (2) the child has been adjudicated to be a CINA; (3) the child has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months and any trial period in the home has been less than thirty days; and (4) clear and convincing evidence exists that the child cannot be returned to the custody of her parents as provided in section 232.102 at the present time.

CINA adjudications. She contends the State's allegations concerning substance abuse, domestic violence, and lack of stability were unsubstantiated.

The record debunks the mother's position on appeal. Stephanie admitted being dishonest about her past methamphetamine use. She relapsed just three months before the termination hearing and had not completed a treatment program since the relapse. The mother's unresolved methamphetamine addiction was a barrier to reunification. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (recognizing "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"). In addition, during her testimony Stephanie could not explain why she was willing to jeopardize reunification with her daughters by maintaining a relationship Y.F., given his physical abuse toward her and given her knowledge he was on the sex offender registry for abusing a child. Due to the mother's lack of insight, returning the girls would be contrary to their welfare. *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) (upholding termination when record disclosed mother had gained little understanding about domestic violence issues or dangers they posed to her children).

Finally, while it is encouraging for Stephanie that she has been able to secure her own residence and a job in hotel housekeeping, those were fledgling developments at the time of the termination hearing and would not ensure the safety of the children if returned to her care. We note the guardian ad litem favored termination, telling the court "the evidence presented makes it clear that these girls would be at significant risk if returned to the custody of their mother

today." Reviewing the record in its entirety, we find clear and convincing evidence to support termination under subsections (f) and (h).

### B. Best Interests and Parent-Child Bond

After affirming the statutory grounds, we have more work to do. Questions remain on whether termination is in the children's best interests under Iowa Code section 232.116(2) and whether factors exist under section 232.116(3) that allow the court to abstain from terminating the parent's rights. *See In re P.L.*, 778 N.W.2d 33, 37–38 (Iowa 2010) (setting out three-step framework in termination cases). Here, Stephanie points to the girls' bond with her and asserts the record contains no evidence "anyone else stood in a better position than [she] to provide life-long love and affection for these children."

Section 232.116(2) directs the juvenile court to give primary consideration to the safety of the children; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs. *Id.* at 37. Because of her preoccupation with a dangerous partner and relapse into methamphetamine abuse, the mother has not consistently met the children's physical, mental, and emotional needs. We agree with the juvenile court that the best interests of A.S. and G.F. would be served by terminating Stephanie's rights and allowing them to move into a pre-adoptive foster care placement.

Section 232.116(3)(c) allows the juvenile court to refrain from terminating parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." This factor is permissive, not mandatory. *See M.W.*, 876

N.W.2d at 225. Under the facts before us, we do not find the closeness of the relationship between the girls and their mother outweighs their need for a permanent placement. As one example, A.S.'s therapist reported that A.S. was "working hard to cope with the uncertainty in her life and to find healthy ways to get her needs met." The therapist recommended "permanency be established as soon as possible so [A.S.] can be reassured that she has a place to grow up and consistent adults to care for her." Taking that recommendation to heart, we reach the same conclusion as the district court, finding no basis under section 232.116(3) to forgo termination of these children.

### C. Additional Time

Finally, Stephanie asserts that—assuming she is not presently able to care for the children in a safe manner—she will be able to do so after a six-month extension. *See* Iowa Code § 232.104(2)(b).[5] For the reasons discussed above, we decline to defer the children's placement. While Stephanie may be able to achieve greater stability in her housing and employment over time, her testimony provides little hope she will appreciate the peril posed by her continued association with Y.F. or will fully address her methamphetamine addiction. Because the children had been out of the home for twelve months at the time of the hearing, "we view the proceedings with a sense of urgency." *See In re A.A.G.*, 708 N.W.2d 85, 93 (Iowa Ct. App. 2005). From our de novo review of the

---

[5] That section reads, in relevant part:
> [T]o continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

record, we are unable to make a finding the need for removal would no longer exist after a six-month extension.

**AFFIRMED.**